NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**XEROX CORP.,**
*Appellant*

**v.**

**SNAP INC., META PLATFORMS, INC., FKA FACEBOOK, INC., X CORP.,**
*Appellees*

---

2023–1983, 2023–1985, 2023–1988

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2021–00987, IPR2021–01294, IPR2021–01458.

---

Decided: July 24, 2025

---

JAMES ELROY QUIGLEY, McKool Smith, P.C., Austin, TX, argued for appellant. Also represented by KEVIN L. BURGESS, Marshall, TX; ALEXANDRA FIGARI EASLEY, DAVID SOCHIA, Dallas, TX.

PHILLIP EDWARD MORTON, Cooley LLP, Washington, DC, argued for appellee Meta Platforms, Inc. Also represented by HEIDI LYN KEEFE, ANDREW CARTER MACE, MARK R. WEINSTEIN, Palo Alto, CA.

2                                    XEROX CORP. v. SNAP INC.

YAR R. CHAIKOVSKY, White & Case LLP, Palo Alto, CA, argued for appellee Snap Inc. Also represented by DAVID OKANO; NAVEEN MODI, JOSEPH PALYS, Paul Hastings LLP, Washington, DC.

DEBRA JANECE MCCOMAS, Haynes and Boone, LLP, Dallas, TX, argued for appellee X Corp. Also represented by DAVID L. MCCOMBS; ADAM LLOYD ERICKSON, ANGELA M. OLIVER, Washington, DC.

─────────────────────

Before HUGHES, CUNNINGHAM, and STARK, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Xerox appeals a decision holding unpatentable all claims of its patent, U.S. Patent No. 8,489,599, in a series of consolidated *inter partes* review proceedings initiated by Appellees Snap, Inc.; Meta Platforms, Inc.; and X Corp. Because we affirm the Board's claim construction, which is the dispositive issue in Xerox's appeal to the IPR challenge filed by Snap, we affirm the Board's decision holding unpatentable all challenged claims.

I

The '599 patent is entitled "Context and Activity-Driven Content Delivery and Interaction" and issued on July 16, 2023, from an application filed on December 2, 2008. J.A. 166. The '599 patent is directed "to techniques and systems for creating and presenting content based on contextual information." J.A. 171 (1:9–11). In one embodiment, a "computing device receives a set of contextual information with respect to the user, and processes the contextual information to determine whether some aspect of the current context can be associated with a probable activity being performed by the user." J.A. 171 (1:52–56). "Contextual information" includes "input data that is gathered by a computing device" and "reflects basic information

associated with the user and/or the operating environment of the computing device," like the time of day. J.A. 173 (6:15–19, 6:30–33). This contextual information is used to determine some aspect of the user's context, which is "a set of data that describes an event or environmental factor associated with a user" that can be "inferred from contextual information," and includes things such as "whether the user is sitting down, watching TV, [or] asleep." J.A. 174 (7:36–41, 7:46–49). The computing device then processes that contextual information to determine whether it satisfies a predetermined trigger condition and presents content to the user if it does. J.A. 171 (1:50–62). A "trigger condition" can be, for example, a time of day, a day of the week, or a location. J.A. 172 (3:64–4:3). An example of use is to "remind the user to buy groceries [i.e., presenting content] as the user is driving past a grocery store after work [i.e., contextual information that triggers a condition for presenting the content]." J.A. 173 (5:27–30).

The '599 patent further provides that "[i]n a variation on this embodiment, the computing device presents the selected content by following a number of pre-defined or user-defined presentation rules associated with the selected content, monitoring actions performed by the user, and presenting the selected content based on the actions performed by the user." J.A. 171 (2:32–37). Presentation rules may specify an expected response and actions to take based on whether a user provides the expected response. J.A. 175–76 (10:34–11:41; Table 1). An "expected response" can include a simple "OK" to dismiss an alert. J.A. 176–77 (11:27–28, 12:45–56, 13:64–14:4; Table 2).

Independent claim 1 is illustrative:

> 1. A method for delivering context-based content to a first user, the method comprising:
>
> receiving at least one content package, wherein the content package includes at least one content piece and a set of rules associated

with the content package, wherein the set of rules includes a trigger condition and an expected response, and wherein the trigger condition specifies a context that triggers a presentation of the content piece;

receiving a set of contextual information with respect to the first user;

processing the contextual information to determine a current context for the first user;

determining whether the current context satisfies the trigger condition;

in response to the trigger condition being satisfied, presenting the content piece to the first user;

receiving a response from the first user corresponding to the presented content piece;

determining whether the received response matches the expected response; and

performing an action based on an outcome of the determination.

On May 21, 2021, Snap filed a petition for IPR challenging all claims of the '599 patent. On July 20, 2021, Meta[1] filed a petition for IPR challenging claims 1, 4, 6–7,

---

[1] At the time its IPR petition was filed, Meta was known as "Facebook, Inc." The company changed its corporate name to "Meta Platforms, Inc." in October 2021. This Court granted a motion to amend the case caption to replace Facebook, Inc. with Meta as the appellee in February 2024. Meta and X's Response Br. at 1 n.1.

9–12, 15, 17–19, 22, 24–25 of the '599 patent; X[2] filed a petition for IPR challenging claims 1, 4, 6–7, 9–12, 15, 17–18 on August 31, 2021. Each petition relied on different prior art. The Board instituted the Snap, Meta, and X IPRs in November 2021, January 2022, and April 2022 respectively. The Board consolidated the three IPR proceedings and issued a single final written decision on March 24, 2023, concluding the Petitioners had collectively established all of the '599 patent claims were unpatentable.[3]

Xerox timely filed its notices of appeal for all three IPRs. 35 U.S.C. § 142, 37 C.F.R. § 90.3(a)(1). We have exclusive jurisdiction over this appeal under 35 U.S.C. § 141(c) and 28 U.S.C § 1295(a)(4)(a).

II

"Claim construction is a legal issue reviewed de novo, based on underlying factual findings that are reviewed for substantial evidence." *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 990 (Fed. Cir. 2017).

---

[2]    At the time its IPR petition was filed, X was known as "Twitter, Inc." The company has since changed its corporate name to "X Corp." X Corp. was named as the appellee at the time the appeal before us was docketed.

[3]    In each of the IPRs, Xerox filed substantively identical Contingent Motions to Amend to substitute claims 26–40 for claims 1, 4, 6, 7, 9–12, 15, 17–19, 22, 24, and 25. The Board determined Meta and X had demonstrated that the substitute claims, which added limitations to the original independent claims, were unpatentable as obvious and as patent-ineligible. J.A. 149—61. On appeal, Xerox does not challenge the Board's determination that its substitute claims are unpatentable; its appeal is limited to the Board's decision holding the original claims unpatentable. Xerox's Opening Br. 13.

Xerox's challenges on appeal all depend on reversing the Board's claim construction. It is undisputed that Snap's cited prior art renders all claims of the '599 patent obvious under the Board's claim construction. The parties all agree that, if we affirm the Board's claim construction, we can affirm the Board's decision holding all claims unpatentable under Snap's IPR. *See* Meta and X's Response Br. 2 n.2 ("The claim construction argument regarding an 'unexpected response' is a dispositive issue in Xerox's appeal to the IPR challenge filed by Snap Inc."); Oral Argument[4] at 4:45–5:00 (Xerox), 12:08–12:14 (Snap); 18:45–19:00 (Meta); 20:06–20:12 (X's counsel stating "ditto" following Meta's oral argument).

Xerox argues that the Board erred in rejecting Xerox's argument that the claim limitation "determining whether the received response matches the expected response" requires the possibility of both expected and unexpected responses being the received response.[5] Specifically, Xerox argues that this claim limitation requires the explicit disclosure of the possibility of an unexpected response. Xerox contends that the Board's construction is inconsistent with the claim language, '599 patent specification, and the prosecution history. We disagree.

The claims do not recite an unexpected response, nor does the specification ever mention an "unexpected response." While Xerox accuses the Board of engaging in "hyperliteralism" and "linguistic summersaults" in making this observation, it provides only vague references to "the claims" as requiring the "possibility of both expected and

---

[4]    Available at *https://oralarguments.cafc.uscourts .gov/default.aspx?fl=23–1983_06032025.mp3.*

[5]    Xerox never articulated, either to the Board or on appeal, an express construction that it believes is the proper construction of this claim limitation. *See* Oral Argument at 20:25–45.

unexpected responses be [sic] the received response" without providing detail on where the claims describe these options or which exact limitations require this possibility. Xerox's Opening Br. 16, 21 (emphasis omitted). The claims recite determining whether the received response matches the expected response. This is one determination related to one type of response—the *expected* response. Our analysis can end here.

In *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1365 (Fed. Cir. 2003), we rejected a similar attempt to import limitations into a claim that were not recited in the claim nor provided for by the specification, noting "[c]ourts may not rewrite claim language based on what has been omitted from a claim." If Xerox wanted its more limited construction, it should have written the claims as it did in its proposed substitute claims. Xerox's proposed substitute claim 26, which was advanced by Xerox to replace original claim 1, recites, in relevant part, "determining whether the received response . . . *is expected or unexpected, wherein the received response is expected if the received response matches one or more of the at least one predefined response, and wherein the received response is unexpected if the received response does not match any of the at least one predefined response*." J.A. 134–35 (deleted portions of original claim 1 omitted) (emphasis on added portions). *See generally Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1284 (Fed. Cir. 2012) (declining to import a limitation into the construction of "elongated outer shell" in part because claims in a related abandoned patent application explicitly required the limitation).

The '599 patent's specification further supports the Board's construction. For example, Table 1 of the '599 patent, reproduced below, presents "an exemplary set of rules for presenting [a] content package to a user." J.A. 176 (11:11–12). The table's entries "correspond to a number of

audio clips in Japanese for practicing pronunciations of a number of words." J.A. 176 (11:13–15).

TABLE 1

| Content | Time | Location | State | Response | Action Correct | Action Incorrect |
|---|---|---|---|---|---|---|
| JpI.mp3 | Any | Any | Moving | Mimic | 7-day-suspend | 5-min-suspend |
| JpHello.mp3 | Any | Any | Moving | Mimic | 7-day-suspend | 5-min-suspend |
| JpHowDoYouDo.mp3 | Any | Any | Moving | Mimic | 7-day-suspend | 5-min-suspend |

TABLE 1-continued

| Content | Time | Location | State | Response | Action Correct | Action Incorrect |
|---|---|---|---|---|---|---|
| JpGoodnight.mp3 | >21:00 | Bedroom | Moving | Mimic | 7-day-suspend | 5-min-suspend |
| JpGoodmorning.mp3 | <10:00 | Bedroom | Moving | Mimic | 7-day-suspend | 5-min-suspend |

The table specifies the expected user response to the playing of different audio clips, which is triggered based on a set of conditions including time, location, and state, is for the user to correctly mimic the played audio. The table provides actions based on whether the user correctly mimics the phrase: suspend for 7 days if correct or suspend for 5 minutes if incorrect.

The Board cited the '599 patent's explanation, J.A. 177 (13:1–7), that the "*action incorrect column entry* can obtain a value that specifies an action to be performed by content management system 240 on the occasion that *the user does not provide an expected response*" to support its conclusion that the claims merely require determining whether the received response is the expected response or not. J.A. 17 (emphasis in original). There is no basis for importing a requirement into the claims that there be an additional determination about whether the received response is an unexpected response. The Board correctly concluded

Xerox's "assertions that 'unexpected response' should be included in the claim term amounts to impermissibly attempting to write a limitation into the claim" and declined to adopt Xerox's construction. J.A. 21–22.

Xerox lastly argues that a claim amendment in the prosecution history supports its construction. Xerox's Opening Br. 32. The originally filed claim required "determining whether either or both the context and a current activity of the first user satisfy a trigger condition," J.A. 3432; the amendment in question added a step to determination whether there is a match between a received response and an expected response as recited in the issued claim to overcome a rejection. *Compare* J.A. 3432–40, *with* J.A. 3721–23. Nothing about this amendment (which anyway relates to a different claim limitation) requires assessing an unexpected response as such; it only requires determining whether the received response was *expected*, and this is how the applicant explained the amendment to the Examiner, J.A. 3721–22, without any reference to an unexpected response, J.A. 3789–90, 3795. The Board properly rejected Xerox's proposed claim construction as unsupported by all offered intrinsic evidence.

## III

We have considered Xerox's remaining arguments regarding claim construction and find them unpersuasive. Because we affirm the Board's decision holding all challenged claims unpatentable in the Snap IPR, we need not reach Xerox's arguments regarding the Meta and X IPRs. Because we agree with the Board's claim construction, we affirm the Board's decision holding all claims of the '599 patent unpatentable.

**AFFIRMED**